UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-23059-CIV-WILLIAMS

BERKLEY INSURANCE COMPANY,
a foreign corporation,

    Plaintiff,
v.

SUFFOLK CONSTRUCTION
COMPANY, INC., a foreign corporation

    Defendant.
_____/

SUFFOLK CONSTRUCTION COMPANY,
a foreign corporation,

    Third-Party Plaintiff,
v.

TITUS CONSTRUCTION GROUP, INC.,
a Florida Corporation,

    Third-Party Defendant.
_____/

**BERKLEY INSURANCE COMPANY AND TITUS
CONSTRUCTION GROUP'S MOTION TO EXCLUDE EXPERT TESTIMONY
OF DAVID POGORILICH AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, BERKLEY INSURANCE COMPANY ("BERKLEY"), and Third-Party Defendant TITUS CONSTRUCTION GROUP ("TITUS"), by and through undersigned counsel and pursuant to and pursuant to *S.D. Local Rule* 7.1, FEDERAL RULE OF EVIDENCE 403, and FEDERAL RULE OF EVIDENCE 702, hereby file this instant *Motion to Exclude Expert Testimony of David Pogorilich and Incorporated Memorandum of Law*, and in support thereof states:

CASE NO.: 19-23059-CIV-WILLIAMS

## I. INTRODUCTION[1]

In the *Expert Report of David Pogorilich* (the "Pogorilich Report"), Mr. Pogorilich offered expert opinions that TITUS breached the subcontracts at issue in this case and that SUFFOLK did not breach those subcontracts. In addition, Mr. Pogorilich offers a completely and purely legal advocacy interpretation BERKLEY's performance bonds such that the penal sum limit of BERKLEY's liability does not apply in this case. From beginning to end, Mr. Pogorilich makes no pretense of objectively describing "scientific" or "technical" matters. In fact, Mr. Pogorilich shows himself to be retained for the sole purpose of impermissibly stepping into the position of legal advocate under the guise of an expert witness. Mr. Pogorilich does nothing more than parrot the arguments of counsel and recite selected statements in selected SUFFOLK documents, adding bolding and italics, to reach the "expert" opinion that TITUS breached the subcontracts, and SUFFOLK did not breach them. As for the *Bonds*, he does not even offer any analysis at all—merely a statement that the penal sum does not apply, with not even an explanation. In sum, Mr. Pogorilich is retained solely to present a false expert veneer to SUFFOLK's position in this case, and simply attempts to instruct the Court as to the judgment to be rendered.

Well-established federal law shows that Mr. Pogorilich's "expert opinions" are improper because they consist entirely of impermissible legal conclusions based upon a mere recitation of SUFFOLK's factual and legal contentions. Mr. Pogorilich's characterizations of carefully selected one-sided communications, and his legal interpretations of the subcontracts and application of

---

[1] By Order entered on February 9, 2021 **[DE 75]**, this Court granted the *Parties' Joint Motion to Extend Dispositive Motion Deadline* **[DE 70]**. It is not clear from the Order whether it applied to motions to exclude expert testimony or motions to strike, which were stated separately in the Court's *Amended Scheduling Order* **[DE65]** as motions that must also be filed the same day as dispositive motions. BERKLEY files this *Motion* as a precaution in the event the Court construes motions to exclude expert testimony as also having been extended, as BERKLEY has been informed that SUFFOLK also intends to file motions of its own to exclude expert testimony.

those interpretations to the parties' conduct result in purely legal conclusions that do not assist the trier-of-fact as to any *technical or scientific* issue in the case. Rather, Mr. Pogorilich's opinions invade the province of as the decider of facts and sole determiner of the applicable law, including the interpretation of the subcontracts at issue in this case. As to the breach of subcontract issues in this case, the sum and substance of Mr. Pogorilich's "expert" report is that "if you believe SUFFOLK, and disbelieve TITUS, then SUFFOLK should prevail in the case." As to BERKLEY, his testimony essentially is "the Bonds mean what I say they mean regardless of their language." As his testimony in this regard is a purely legal interpretation as to the applicability of the penal sum limitation of the bond, Mr. Pogorilich's testimony should be excluded.

## II. FACTUAL BACKGROUND

1.  On January 1, 2020, BERKLEY (as assignee of TITUS) filed its *Amended Complaint for Damages* **[DE 30]** against SUFFOLK seeking to recover damages to TITUS arising from SUFFOLK's breach of three separate written *Subcontract Agreements* for framing and drywall work at a construction project in Miami, Florida know as Met Square (the "*Subcontracts*" or the "*Project*"). SUFFOLK was the general contractor for the Project, and TITUS was the subcontractor. BERKLEY served as TITUS' surety and issued payment and performance bonds (the "*Bonds*") in connection with the *Subcontracts*.

2.  On February 11, 2020, SUFFOLK filed its *Answer, Affirmative Defenses, and Counterclaim to Plaintiff's Amended Complaint* **[DE 32]** asserting, among other things:

    - as its *Third Affirmative Defense – Prior Breach* of the *Subcontracts* by TITUS;

    - a *Counterclaim* against BERKLEY, as TITUS' surety under the *Bonds,* based on alleged breach by TITUS of the *Subcontracts*.

3. On February 11, 2020, SUFFOLK filed its *Third-Party Complaint against Titus Construction Group, Inc.* **[DE 33]** seeking damages for alleged breach of the *Subcontracts.*

4. On March 18, 2020, BERKLEY filed its *Answer and Affirmative Defenses to Counterclaim of Suffolk Construction Company* **[DE 45]** asserting, among other things:

- as its *Third Affirmative Defense – Breach of Subcontract* by SUFFOLK; and

- as its *Fifth Affirmative Defense* – the penal sum limitation of BERKLEY's *Bonds* limit the damages that SUFFOLK can recover in this case.

5. In its Responses and Supplemental Responses to SUFFOLK's *Interrogatories*, BERKLEY stated that, in response to SUFFOLK's demands upon BERKLEY's *Residential Tower Bond*, BERKLEY had financed over $4.1 million to TITUS, to enable TITUS to continuing performing under the *Residential Tower Subcontract*, and that this sum should be credited against its *Bond* penal sum, thus limiting SUFFOLK only to recovery of whatever amount remained in the penal sum after BERKLEY's financing expenditures were deducted.[2]

6. On October 23, 2020, SUFFOLK filed its *Expert Witness Disclosure*, specifically identifying, among others, David Pogorilich as a purported expert witness "expected to provide expert opinions on the reasonable measures taken by Suffolk to mitigate its damages resulting from Titus' breach of contract."[3]

---

[2] *See* BERKLEY's *Supplemental Responses to Suffolk Construction Company's First Interrogatories*, attached as **Exhibit "1"**.

[3] *See Expert Witness Disclosure*, attached hereto as **Exhibit "2"**.

7. The *Expert Witness Disclosure* appended the Pogorilich Report dated October 22, 2020.[4] As identified in the Pogorilich Report, Pogorilich was retained to analyze:

> the reasonableness of measures taken by Suffolk to mitigate its damages resulting from [TITUS'] actions or inactions as the framing and drywall subcontractor . . . [5]

> the extent of control exerted by Berkley Insurance Company ("Berkley") over Titus.

### III. STANDARD FOR ASSESSING THE ADMISSIBILITY OF EXPERT OPINIONS

FEDERAL RULE OF EVIDENCE 702 governs admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *United States v. Newball May*, 2021 WL 717002, at *3 (11th Cir. 2021). While district courts have broad discretion in deciding to admit or exclude expert testimony, the district courts also serve as the gatekeeper, tasked with safeguarding the principle that expert testimony is admissible when "sufficiently reliable and relevant to be considered by the jury." *Id.*, *citing*

---

[4] *See Pogorilich Report*, attached hereto as **Exhibit "3"**.

[5] *See Pogorilich Report*, I. Executive Summary, p. 3.

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 - 48, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); and *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997) (district courts have broad discretion in deciding admissibility of expert testimony). Further, trial courts acting as gatekeepers should determine whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) ***the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue***.

*Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010) (emphasis added); *Torres v. Carnival Corp.*, 635 F. App'x. 595, 599 (11th Cir. 2015) (same).

Moreover, SUFFOLK, as the party offering the expert opinion of Pogorilich, has the burden of laying the proper foundation for admission of his testimony. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1107 (11th Cir. 2005) (ruling the trial court did not abuse its discretion in excluding expert testimony after determining proponent offering expert testimony failed to carry the burden of establishing the testimony would assist the jury). Consequently, SUFFOLK "must demonstrate that the witness is qualified to testify competently, that his opinions are based on sound methodology, and that his testimony will be helpful to the trier of fact." *Id.*

Further, expert opinion may also be excluded under Rule 403 of the FEDERAL RULE OF EVIDENCE, "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Fed. R. Evid.* 403; *United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004) ("Exclusion

under Rule 403 is appropriate if the probative value of otherwise admissible evidence is substantially outweighed by its potential to confuse or mislead the jury").

IV. **MEMORANDUM OF LAW**

Even a cursory review of the Pogorilich Report evidences that such testimony is not designed to provide an expert opinion on any issue which requires a "scientific, technical, or other specialized knowledge [to] assist the trier of fact in understanding the evidence." Each of the purported "expert opinions" identified in the Pogorilich Report are nothing more than a bald effort by Pogorilich to re-purpose SUFFOLK's own factual allegations and legal arguments as an "expert" opinion; thereby invading the province of the fact finder and this Court. "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *United States v. Frazier*, 387 F.3d 1244, 1262-63 (11th Cir. 2004); *Michigan Millers Mut. Ins. Corp. v. Benfield,* 140 F.3d 915, 921 (11th Cir.1998) (quoting *Joiner,* 522 U.S. at 146, 118 S.Ct. 512) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.").

**A. Pogorilich's Report and Testimony Regarding Whether SUFFOLK or TITUS Breached the *Subcontracts* Should be Excluded Because One-Sided Interpretations of Communications and Contract Provisions that Contain <u>No Scientific or Technical Analysis are Not Proper "Expert" Testimony</u>.**

Expert testimony is admissible where "it concerns matters that are beyond the understanding of the average lay person," but such testimony "generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Cook*, 402 F.3d 1092, 1111; *Hibiscus Associates Ltd. v. Bd. of Trustees of Policemen & Firemen Ret. Sys. of City of Detroit*, 50 F.3d 908, 917 (11th Cir. 1995) ("Expert testimony is properly excluded when it is not needed to clarify facts and issues

of common understanding which jurors are able to comprehend for themselves."). Thus, expert testimony is not permitted when the witness simply recounts the facts and instructs the trier-of-fact on what conclusion should be reached. *Montgomery v. Aetna Cas. & Sur. Co.,* 898 F.2d 1537, 1541 (11th Cir.1991).

These basic principles apply with particular strength in this case. For instance, the Pogorilich Report purports to offer "expert" analysis of "The Performance of Suffolk During the Construction Phase." (Pogorilich Report, pp. 18-25) Yet, the first four pages of this section is nothing more than a pure repetition of various letters SUFFOLK wrote to TITUS broadly claiming breaches of the *Subcontracts*. The only "expertise" Pogorilich supplied was bolding and italicizing selected text within the letters. There is no technical knowledge applied at all, just a blind re-quoting of SUFFOLK's statements, with gratuitous emphasis added where even SUFFOLK did not supply it. The remaining pages of this section are a *re-recitation of the very same letters,* this time in a table where Pogorilich quotes provisions of the *Subcontracts* supposedly applicable to each of the statements. The remaining page is a legal brief, not an expert opinion, which assumes without discussion that TITUS breached the *Subcontracts* and then presents legal argument as to what alleged remedies SUFFOLK might have had under the *Subcontracts.*

In these seven pages, the core of his "expert" report, there is not one scientific principle, not one technical standard, not one instance of specialized knowledge cited for support—nothing at all except that "I believe SUFFOLK." This is not the stuff of which expert opinions are made.

The same is true of his "Review and Analysis of the Performance of Titus During The Construction Phase." (Pogorilich Report, pp. 14-17). The first two pages of this section state that "there is evidence that Titus failed to perform its obligations under the subcontract including competing its scope of work within the duration specified in the project schedule." The only

support for this statement is selected quotations from two emails SUFFOLK sent to TITUS asking for additional manpower. Of course, it goes without saying, that there is no discussion of TITUS' response to these emails, and no discussion of TITUS' statements that its manpower was sufficient. Significantly, Pogorilich engages in no schedule analysis of any kind.[6] Pogorilich offers no technical analysis connecting TITUS manpower to the project schedule. There is no technical analysis of TITUS' actual manpower and its relationship to the scope of work. There is no calculation regarding what manpower SUFFOLK contends "should" have been sufficient. The sum of his "expertise" is that "if Suffolk said it in an email, it must be true." This, of course, is nothing more than painting SUFFOLK's factual position with an "expert" veneer.

The same flaws appear in Pogorilich's discussion of TITUS claimed financial difficulties. The facts upon which Pogorilich relies (that TITUS obtained financing from BERKLEY, issued letters instructing SUFFOLK to pay all remaining contract funds to BERKLEY, and signed a Financing Agreement and Promissory Note with BERKLEY) are not the subject of any "expert" analysis. Lengthy quotations from these documents occupy pages of the Pogorilich Report as a substitute for technical analysis. The only analysis applied, later on in the Report, is a legal conclusion that these actions might have allowed SUFFOLK to terminate the *Subcontracts,* a baffling "expert" conclusion since SUFFOLK neither sought to, nor did it terminate, TITUS at any time. In any event, this latter conclusion is merely a legal conclusion interpreting the *Subcontracts*, and not an "expert" evaluation of any technical issue.

---

[6] The only "delay events" he notes are confusingly stated in the "executive summary", and are delays identified by a different expert retained by Suffolk (Report, p. 12). Even without reference to this other report, looking at the Pogorilich Report on its own terms clearly shows that Pogorilich did not perform any sort of schedule evaluation—the Report only recites delays alleged by SUFFOLK in email correspondence, with no independent technical analysis of any kind regarding the project schedule.

**B. Pogorilich's Report and Testimony as to SUFFOLK's and TITUS' Performance of the *Subcontracts* Should be Excluded as it Consists Entirely of Bald Statements That SUFFOLK Did Not Breach the *Subcontracts*, Without Applying Any Technical or Other Specialized Knowledge.**

It is well-recognized that expert opinion must not include legal conclusions. *Cook*, 402 F.3d 1092, 1107; *In re Rosenberg*, 2012 WL 3870351, at *2 (S.D. Fla. Bankr. 2012) (expert testimony offering legal opinion usurps the court's role and could confuse the jury). The proffered opinions in the Pogorilich Report are nothing more than a method to impose SUFFOLK's legal conclusions to the ultimate legal issues in the litigation as "expert" opinions. The cornerstone dispute in this case is whether SUFFOLK or TITUS breached the *Subcontracts*.[7] Pogorilich's sole role in this case is to decide this issue in SUFFOLK's favor by giving an "expert" opinion that SUFFOLK did not breach and TITUS breached.[8] All of the foregoing are <u>*legal conclusions*</u> and not "expert opinions" upon which Pogorilich can rightly opine. *Kleiman v. Wright* 2020 WL 6729362, at *23 (S.D. Fla. 2020) ("Testifying experts may not offer legal conclusions"); *Cook*, 402 F.3d 1092, 1112-3 (excluding as legal opinion, expert testimony that constitutional rights were violated).

In addition, a witness also may not testify to the legal implications of conduct. *See Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990 (by allowing testimony that insurer had duty to hire counsel, district court abused its discretion by allowing expert opinion as to the scope of duties under the contract). The Pogorilich Report is replete with the discussing legal implications of conduct. Indeed, entire sections of the Pogorilich Report are dedicated to

---

[7] *See* BERKLEY's *Amended Complaint* Counts I-3 [DE 30]; SUFFOLK's *Third* and *Fifth Affirmative Defenses* in its *Answer, Affirmative Defenses, and Counterclaim to Plaintiff's Amended Complaint* **[DE 32]**; and SUFFOLK's *Third-Party Complaint against Titus Construction Group, Inc.* **[DE 33]**.

[8] *See* Pogorilich Report, pp. 5-6 and 29.

characterizing SUFFOLK's actions as "reasonable" under the *Subcontracts*,[9] and using one-sided interpretations of SUFFOLK's correspondence as characterizing TITUS' actions as a failure to properly perform.[10] Thus, the fundamental methodological defect inherent in Pogorilich's opinions is the pervading reliance upon his personal interpretation of the legal requirements of TITUS, BERKLEY, and SUFFOLK under *Subcontracts* and *Bonds*. SUFFOLK's attempt to proffer Pogorilich as a legal expert is improper, and his testimony should be excluded. *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 2009 WL 6357793, at *20 (M.D. 2009) (expert witnesses not permitted to assert statements that amount to legal conclusions).

### C. Pogorilich's Report and Testimony Regarding BERKLEY's Actions Under the *Bonds*, and Interpreting the Penal Sum Limitation of the *Bonds*, Should be Excluded as Improper Legal Conclusions.

Pogorilich develops a theory in his Report that BERKLEY, in responding to SUFFOLK's demands under the *Bonds*, became a "de facto" subcontractor for completing the work by virtue of the actions BERKLEY took to finance TITUS' continued performance, and "effectively assumed the role of subcontractor to complete Titus' scope of work."[11] At the outset, it must be noted that Pogorilich's *curriculum vitae* shows absolutely no experience, education, or training in the surety industry, no employment with any sureties, no surety or insurance licensing, and no responsibility for surety claim handling or decision-making. Thus, any opinion proffered by Pogorilich regarding the legal effect of BERKLEY's actions is not supported by the requisite expert knowledge or experience necessary to support a valid opinion.

---

[9] *See* Pogorilich Report, pp. 6-7, 24, 29-30.

[10] *See* Pogorilich Report, pp. 5-6, 14-17, 29.

[11] *See* Pogorilich Report, p. 4.

But, the true purpose of Pogorilich's engagement was never to offer any "expert" opinion as to BERKLEY, but only to dress up SUFFOLK's legal arguments to avoid BERKLEY's penal sum defense. Indeed, the actual end game of the Pogorilich Report is on page 28, which contains the following statement:

> **Berkley's Exposure to Suffolk**
>
> In the absence of a takeover agreement or any other agreement limiting Berkley's exposure to Suffolk, Berkley's liability to Suffolk for damages caused by Titus may exceed the amount of the Bonds.

It is abundantly plain that this is the most "pure" legal conclusion possible. This section does not even offer the pretense of any type of analysis at all. It does not even purport to continue in the vein of the "de facto" subcontractor theory. It goes beyond the engagement described in the opening section of the Report.

In fact, not only does Pogorilich offer this statement about the meaning of the *Bonds*, he offers this statement without any reference to the *Bonds* or the *Bonds'* actual language. Under the language from page 4 of the Report, quoted *supra*, BERKLEY's actions would be deemed by Pogorilich as "completion" of the *Subcontracts*—an identified option under paragraphs 4.1 of the *Bonds*. And, in this "event," like all other possible events and options under the *Bonds*, BERKLEY's liability shall "***in no event***" exceed the *Bond* penal sum.

Pogorilich's statements are not even a legal analysis, but a legal "wish list" to dictate a particular outcome of the case. This in no measure qualifies as an "expert" evaluation based on technical, scientific or industry knowledge.

CASE NO.: 19-23059-CIV-WILLIAMS

## V.  CONCLUSION

Cover to cover, the Pogorilich Report merely copies portions of the explicit language of various correspondence and contracts – all of which will be presented to the Court at trial. Pogorilich then provides his interpretation of these documents and espouses SUFFOLK's legal conclusions as to the significance of those documents. The Court, however, is more than capable of reading correspondence and unambiguous contracts and does not require an expert to bold, italicize, emphasize and interpret the meaning of those documents. *Kleiman,* 2020 WL 6729362, at *25 (the trier-of-fact does not require an expert to help interpret the meaning and implications of communications). As the opinion proffered by Pogorilich does not concern any matter outside the role of this Court as fact-finder and interpreter of contracts, his testimony is inadmissible and should be excluded.

**WHEREFORE**, BERKLEY and TITUS hereby request that the Court grant the *Motion*, excluding the testimony of Pogorilich and the Pogorilich Report from trial, any other such relief this Court deems just, necessary and proper.

**ETCHEVERRY HARRISON LLP**
Attorneys for BERKLEY
150 South Pine Island Road, Suite 105
Fort Lauderdale, Florida 33324
Telephone: (954) 370-1681
Facsimile: (954) 370-1682
Harrison@etchlaw.com
Etcheverry@etchlaw.com
Service@etchlaw.com

By: /s/ *Guy Harrison*
Guy Harrison, Fla. Bar No. 368806
Edward Etcheverry, Fla. Bar No.: 856517
Joyce C. Albert Fla. Bar No.: 734470

CASE NO.: 19-23059-CIV-WILLIAMS

**Rule 7.1 Certification**

Undersigned counsel certifies, pursuant to S.D. Local Rule 7.1, that he has conferred with counsel for the Plaintiff who do not agree to the relief requested in this Motion.

By: /s/ *Guy Harrison*
Guy Harrison, Fla. Bar No. 368806

**CERTIFICATE OF SERVICE**

**WE HEREBY CERTIFY** that on this 8th day of March, 2021, we filed the foregoing with the Clerk of Court through CM/ECF. We also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to received electronically Notices of Electronic Filing.

By: /s/ *Guy Harrison*
Guy Harrison, Fla. Bar No. 368806