UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-23059-CIV-WILLIAMS

BERKLEY INSURANCE COMPANY,
a foreign corporation,

    Plaintiff,
v.

SUFFOLK CONSTRUCTION
COMPANY, INC., a foreign corporation

    Defendant.
_____/

SUFFOLK CONSTRUCTION
COMPANY, INC., a foreign corporation

    Third-Party Plaintiff,
v.

TITUS CONSTRUCTION GROUP, INC.,
a Florida Corporation,

    Third-Party Defendant.
_____/

**BERKLEY INSURANCE COMPANY AND TITUS CONSTRUCTION
GROUP, INC'S RESPONSE IN OPPOSITION TO SUFFOLK CONSTRUCTION
COMPANY'S MOTION TO STRIKE DEMONSTRATIVES EXHIBITS**

Plaintiff, BERKLEY INSURANCE COMPANY ("BERKLEY") and Third-Party Defendant, TITUS CONSTRUCTION GROUP, INC. ("TITUS"), by and through undersigned counsel, and pursuant to *Federal Rules of Civil Procedure* and *Federal Rules of Evidence*, hereby file their *Response in Opposition* to SUFFOLK CONSTRUCTION COMPANY, INC.'s ("SUFFOLK") *Motion to Strike Demonstratives Exhibits* ("*Motion*") **[DE 178]**, consisting of factually based animations (**Composite Exhibit 2501** – the "*Animations*") and timelines (**Composite Exhibit 2504** – the "*Timelines*") (collectively, the "*Demonstrative Exhibits*").

CASE NO.: 19-23059-CIV-WILLIAMS

# I.     INTRODUCTION

The *Motion* is devoid of any merit. As a threshold issue, SUFFOLK deprives the Court of the ability to even evaluate the issue by not giving the Court the *Demonstrative Exhibits* in question. A simple review of the *Demonstrative Exhibits* lays to rest SUFFOLK's sole argument that the *Demonstrative Exhibits* contain expert opinions. Excerpts from the *Animations*[1] are attached hereto as **Composite Exhibit "A"** and the *Timelines* are attached hereto as **Composite Exhibit "B"**. The "live" *Animations*[2] may be viewed at:

https://www.dropbox.com/sh/2pvmzs1e4885yxx/AABwIcBzVNzCrDz7MxPxa0dua?dl=0

As clearly evident, the *Animations* and *Timelines* are factual in nature, and SUFFOLK fails to, and cannot, identify a single "expert opinion" on the face of the *Demonstrative Exhibits*. None of the *Demonstrative Exhibits* contain any expert analysis or opinion whatsoever; to the contrary, the *Animations* are solely a product of factual information derived from the *Subcontract* and construction documents, such as Construction Schedules and Daily Logs, and the *Timelines* are derived from the events that occurred during the course of performance of the *Subcontract*. The

---

[1] The *Animations* excerpts include three (3) separate illustrations of the sequence of the drywall work, with supporting factual source data, depicting: *first*, the **SUBCONTRACT** "As-Planned" sequence, with the pertinent sections of Article 6 and Construction Schedule from the *Subcontract*; *second*, the **SUFFOLK** "As-Planned" sequence, with pertinent sections of SUFFOLK's Baseline Schedule dated July 19, 2016; and *third*, the "As-Built" sequence, with pertinent source data from TITUS' Daily Logs.

[2] There are a total of eight (8) *Animations*: (a) two (2) *Subcontract* "As-Planned" sequence (one by date and the other by day count); (b) two (2) SUFFOLK proposed Baseline Schedule "As-Planned" sequence (one by date and the other by day count); (c) two (2) Daily Log "As-Built" sequence (one by date and the other by day count); and (d) two (2) SUFFOLK actual "As-Built" schedule sequence (one by date and the other by day count).

CASE NO.: 19-23059-CIV-WILLIAMS

*Demonstrative Exhibits* are factually driven and are the type of documents routinely used in all types of litigation and, in particular, complex construction litigation.

The *Animations* and *Timelines* are invaluable tools for the Court as they streamline the presentation of, and provide a visual depiction of, extensive factual information contained in voluminous Project records and Trial Exhibits. The *Animations* bring to life thousands of documents, in the form of Daily Logs, to tell an "unbiased" truth as to how the drywall work was actually sequenced. No amount of reading or reviewing of documents will give the Court this perspective. Similarly, the *Timelines* show, with devastating clarity, the facts of how SUFFOLK breached its contractual obligations. For these reasons, SUFFOLK now attempts to improperly conjure a way out, without a single fact supporting its unavailing "expert report" theory.

The *Animations* visually depict the sequence of drywall work as the parties bargained-for planned sequence in the *Subcontract* (the "*As-Planned Animations*") compared to how SUFFOLK actually caused the drywall work to be sequenced during the course of construction (the "*As-Built Sequence Animations*"). A side-by-side comparison of these *Animations* eviscerates SUFFOLK's theory that TITUS adversely affected the Construction Schedule as it was SUFFOLK who unreasonably abandoned the planned sequence, from the very beginning:

- The *As-Planned Animations* show the orderly progression of work up the building, requiring TITUS to work on, and complete, five (5) sequential floors at a time, and is based upon the *Subcontract* and its Construction Schedule, as well as SUFFOLK's own proposed Baseline Construction Schedule; and

- The *As-Built Animations* show the chaotic way SUFFOLK actually sequenced the drywall work, requiring TITUS to perform piecemeal work, randomly jumping around multiple floors, sometimes more than 20-30 floors at a time. The *As-Built Animations*

are based upon the factual information contained in TITUS and SUFFOLK's Daily Logs as to where workers were working in the building on a given day, as further refined with information from TITUS as to the particular activity being done.

As such, the *Animations* are tied to either factual or contractual information and do not present any opinion, expert or otherwise.

Like the *Animations*, the *Timelines* are grounded in factual information contained in Project documents. The *Timelines* are specifically tied to either the Joint Trial Exhibits raised without objection, or to BERKLEY/TITUS' Trial Exhibits to be tendered at the trial, such as project correspondence, pay applications, and similar evidence. Timelines are universally used as demonstratives to aid courts in understanding the parties' respective positions; in fact, SUFFOLK has proposed to use a timeline of its own.

As to the timeliness of the *Demonstrative Exhibits*, SUFFOLK has had the *Demonstrative Exhibits* in its possession for *more than 105 days*. On July 19, 2021, BERKLEY/TITUS and SUFFOLK properly exchanged their respective demonstrative exhibits in connection with the *Pretrial Statement*. At that time, SUFFOLK reviewed and reserved certain objections to same **[DE 156-2, p. 95]** *but not the untimely objections it now seeks to raise.*[3] As the *Demonstrative Exhibits* do not contain any expert analysis or opinion, BERKLEY and TITUS were not required

---

[3] SUFFOLK received the *Demonstrative Exhibits* – just like BERKLEY and TITUS received SUFFOLK's demonstrative exhibits – on July 19, 2021, when the first version of the *Pretrial Stipulation* was filed. SUFFOLK claims to be aggrieved in having to present its objections "four days" before trial (*Motion*, p. 9). Yet, SUFFOLK has no one but itself to blame for waiting over 100 days to raise the issue. This is part of SUFFOLK's persistent, and unfortunate, pattern of casting aspersions upon others for SUFFOLK's own lack of diligence. *See, e.g.*, **DE 160** (Suffolk filed an untimely, post-cutoff, *Motion to Strike* asserting an allegedly "undisclosed" delay claim that was, in reality, stated in the *Complaint* and in interrogatory responses over one year earlier).

to disclose same under the expert disclosure requirements of Rule 26, *Federal Rules of Evidence*. Based upon the foregoing, the *Demonstrative Exhibits* should not be stricken as a matter of law.

## II. FACTUAL BACKGROUND

1. This is a lawsuit between TITUS, a drywall subcontractor, and its surety, BERKLEY, on one hand, and SUFFOLK, the general contractor, on the other hand, arising out of certain drywall work in connection with three (3) separate and distinct subcontracts for the Met Square Residential Tower, Met Square ZF Floors, and Met Square Retail Shell. BERKLEY, as surety, issued *Performance Bonds* ("*Bonds*") on behalf of TITUS, as principal, and in favor of SUFFOLK, as obligee, for each drywall subcontract. The *Demonstrative Exhibits* at issue deal only with the subcontract for the Met Square Residential Tower ("*Subcontract*").

2. As stated in the *Pretrial Stipulation*, one of the primary issues in this case is whether SUFFOLK breached the *Subcontract* by:

   a. Unreasonably abandoning the sequence of the work;

   b. Failing to properly pay TITUS

   c. Failing to properly manage and coordinate the work;

   d. Failing to provide TITUS with proper access to the building; and

   e. Approximately 20 other instances of interfering, hindering or obstructing TITUS' ability to perform its work.

*See Pretrial Stipulation* **[DE 170, pp. 3-7]**.

3. Central to this case is what the parties agreed to as to the contractual sequence of the drywall work under the *Subcontract* and how the actual drywall work was sequenced during construction. The *Subcontract* contained the contractually agreed upon Construction Schedule reflecting the "as-planned" sequence for the drywall work. During the course of construction,

TITUS and SUFFOLK maintained Daily Logs, wherein they reported, contemporaneous, information and data occurring on the *Subcontract*, including, but not limited to, the amount of manpower and work being performed on a given day.

4.      During the ordinary course of discovery, TITUS and SUFFOLK exchanged their respective Daily Log, Construction Schedule(s) and all other relevant, non-privileged documentation related to the Projects.  The Daily Logs and pertinent Construction Schedules are either listed as Joint Trial Exhibits and/or BERKLEY/TITUS Trial Exhibits.

5.      In accordance with this Court's July 8, 2021 *Order* **[DE 150]**, the parties filed their initial *Pretrial Stipulation* on July 19, 2021 **[DE 154]**.

6.      As part of the *Pretrial Stipulation*, BERKLEY/TITUS provided to SUFFOLK the *Demonstrative Exhibits* at issue in this *Motion*.  At the time, SUFFOLK did not log any "untimely expert disclosure" objection to the *Demonstrative Exhibits*, reserving only hearsay, authenticity and relevance objections.[4]

7.      As part of the *Pretrial Stipulation,* SUFFOLK provided its own demonstrative timeline composite exhibits to BERKLEY/TITUS.

8.      On November 4, 2021, counsel for BERKLEY/TITUS emailed SUFFOLK's counsel, requesting a basis for SUFFOLK's *Motion* seeking to strike the *Timelines* when SUFFOLK had produced similar timelines and anticipates relying on same at trial.

---

[4] In its *Motion*, SUFFOLK incorrectly states that the *Demonstrative Exhibits* were produced on August 16, 2021. *See*, *Motion* at pp. 1-2. By e-mails dated July 17 (at 12:43 PM and at 5:26 PM) and July 19, 2021, counsel for BERKLEY/TITUS provided drafts and final versions of the *Demonstrative Exhibits* to SUFFOLK as part of the original *Pretrial Statement*. Copies of the e-mails dated July 17 and 19, 2021, are attached hereto as **Composite Exhibit "E"**. Presumably, SUFFOLK casted their objections to the *Demonstrative Exhibits* based upon the ones in its possession. The *Demonstrative Exhibits* were, again, forwarded to SUFFOLK on August 16, 2021, at SUFFOLK's request.

9. In response, SUFFOLK's counsel represented that the SUFFOLK timelines are admissible as they "are documented in project records that were produced and exchanged as part of discovery" and they do "not contain new analysis or conclusions by [SUFFOLK's] expert or information that was not previously disclosed." A true and correct copy of these email communications by and between counsel are attached hereto as **Exhibit "C"**.

10. SUFFOLK's reasoning equally applies to the *Timelines* – BERKLEY/TITUS *Timelines* are admissible as they "are documented in project records that were produced and exchanged as part of discovery and they do "not contain new analysis or conclusions by [BERKLEY/TITUS'] expert or information that was not previously disclosed."

11. After obtaining the Expert Report from Mr. Michael Bennink, PE, counsel for BERKLEY/TITUS requested his assistance to prepare the *Demonstrative Exhibits* as directed by counsel, largely, because JS Held had the "software" and "trial graphics" capability to generate the *Demonstrative Exhibits*.[5]

12. The *Demonstrative Exhibits* are not and were never intended to be any part of Mr. Bennink's Report or analysis.[6] SUFFOLK seeks to exploit the fact that Mr. Bennink served as a trial graphic designer as the basis for its *Motion*, but it should be of no avail.

**AS TO THE ANIMATIONS:**

13. After Mr. Bennink's report was complete, BERKLEY and TITUS asked if an illustration could be created reflecting the factual sequence of work in the building, based on the

---

[5] *See Affidavit of Michael Bennink in Support of Berkley Insurance Company's Response in Opposition to Suffolk Construction Company's Motion to Strike Trial Animations ("Bennink Aff.")*, ¶ 4, attached hereto as **Exhibit "D"**.

[6] *See Bennink Affidavit*, ¶¶ 5-6.

Daily Logs. Because Mr. Bennink had already maintained a computer database of this information and had available software to create a visual animation of this information, he was instructed to prepare the *Animations*. The *Animations* are not part of his Report, are not generated by any expert calculations or computer models and are a visual representation of the data contained in the Daily Logs and Construction Schedule. Based upon the foregoing, Mr. Bennink created the *Animations* (**Composite Exhibit 2501**).[7]

14. The *Animations* do not include any expert analysis and serve merely as a visual representation of the factual data (such as manpower, location of work, and activity being performed) contained in TITUS' Daily Logs and as supplemented with SUFFOLK's Daily Logs and confirmed by TITUS to the extent TITUS' Daily Logs were incomplete.[8]

15. The *Animations* serve as a demonstrative showing the floors TITUS actually worked on as reflected in the Daily Log reports.[9] Specifically, the *Animations* were created by assigning to each project floor the data explicitly represented in each respective Daily Log report, representing the type of activity of work that occurred on a given day based on the factual data.[10]

16. The *Animations* significantly streamline the fact testimony, which could otherwise be presented by tediously going through each and every Daily Log (hundreds of reports) with a fact witness.[11]

---

[7] *See Bennink Affidavit*, ¶¶ 1 and 7.

[8] *See Bennink Affidavit*, ¶ 8.

[9] *See Bennink Affidavit*, ¶ 9.

[10] *See Bennink Affidavit*, ¶ 10.

[11] *See Bennink Affidavit*, ¶ 11.

**AS TO THE *TIMELINES*:**

17. Similarly, Mr. Bennink was instructed to create the *Timelines* based on the factual data provided to him from project records such as correspondence, pay applications, and other similar project records, that reflected the events depicted on the *Timelines*. Mr. Bennink was not asked, nor did he use, any "expert" methodology, calculations, computer models or other method of extrapolating or interpreting information.[12]

18. Akin to SUFFOLK's representation of its timelines, Mr. Bennink created the *Timelines* based on the factual data in the record and did not include any expert analysis or opinions in the *Timelines*.[13]

### III. LEGAL ARGUMENT

#### A. The *Demonstrative Exhibits* Do Not Contain Any Expert Opinions

As a fundamental issue, this Court should reject SUFFOLK's *Motion* as SUFFOLK did not provide the Court with any factual information that would allow the Court to evaluate the issue raised therein. SUFFOLK neither filed, nor quoted from, the *Demonstrative Exhibits* to identify the so-called untimely expert witness disclosures which it asks the Court to evaluate.[14] Indeed, SUFFOLK did not bring one single fact before the Court in support of its *Motion*. SUFFOLK's tactic is to present accusations devoid of evidence, and then shift to BERKLEY and TITUS the

---

[12] *See Bennink Affidavit*, ¶¶ 1 and 12.

[13] *See Bennink Affidavit*, ¶ 13.

[14] SUFFOLK, having had the *Demonstrative Exhibits* for over three (3) months, has the temerity to accuse BERKLEY and TITUS of "sandbagging" and "trial by ambush," when SUFFOLK admits in the *Motion* that *it* used *its own hired expert* to concoct a theory that the *Demonstrative Exhibits* were "expert witness disclosures" for purposes of filing its motion "four days" prior to the scheduled trial start date. Neither SUFFOLK nor its expert, however, presented any facts or provided any affidavit(s) explaining the basis for this theory.

burden of responding. Instead, this Court should recognize the plain fact that SUFFOLK's *Motion* is not supported by any evidence whatsoever and deny it outright.

To put this issue to rest, BERKLEY/TITUS has attached the *Demonstrative Exhibits* as **Composite Exhibits "A" and "B"** to this *Response*. The *Demonstrative Exhibits* clearly show on their face that they are not expert opinions. It is plain from looking at them that the *Demonstrative Exhibits* depict facts – devastating facts for SUFFOLK – and this is why SUFFOLK must fabricate an argument to challenge them.

*Black's Law Dictionary* defines "expert evidence" as "[e]vidence about a scientific, technical, professional, or other specialized issue given by a person qualified to testify because of familiarity with the subject or special training in the field. — Also termed *expert testimony*. Fed. R. Evid. 702–705." According to Rule 702 of the *Federal Rules of Evidence*, expert opinions come from a witness who is "qualified as an expert by knowledge, skill, experience, training, or education" and may testify if

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

*Fed. R. Evid.* 702. Further, expert testimony includes sufficiently reliable methodology by which the expert reaches his conclusions as determined by the sort of inquiry mandated in *Daubert*; and assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010) (emphasis added); *Torres v. Carnival Corp.*, 635 F. App'x.

595, 599 (11th Cir. 2015) (same). "In determining whether an opinion offered by a witness is lay opinion or expert testimony, it is not the status of the witness that is determinative." *In re Ondrel M.*, 173 Md. App. 223, 244 (2007) ("in the commentary regarding the 2000 amendment to Federal Rule 701, it states: "The amendment does not distinguish between expert and lay witnesses, but rather between expert and lay testimony.").

Here, the *Demonstrative Exhibits* do not act as, or try to be, "expert evidence." For there to be an expert opinion, an actual opinion must be presented. The *Demonstrative Exhibits* do not state any opinions or conclusions. Therefore, on their face, they cannot be expert testimony. Notably, SUFFOLK completely fails to show where in the *Demonstrative Exhibits* the alleged expert testimony exists. This is because they clearly do not contain expert testimony, and the *Motion* is nothing more than an attempt to prevent the Court from seeing this damaging evidence against SUFFOLK's case.

In reality, the *Animations* and *Timelines* are simply the classic type of demonstrative evidence – like any chart or graph – which could have been created by any fact witness or graphics company based on the factual data in the record. The *Demonstrative Exhibits* illustrate factual events that took place during the work based on contemporaneous Project documents. At trial, factual witness(es) will testify about the factual underpinnings of the *Demonstrative Exhibits* and show they do not contain any expert opinions whatsoever. Indeed, Mr. Bennink did not use any "scientific method" or "methodology" to create the *Demonstrative Exhibits*. This simple fact guts SUFFOLK's *Motion.*

CASE NO.: 19-23059-CIV-WILLIAMS

### B. The *Timelines* Should Not Be Stricken as a Matter of Law

SUFFOLK argues that the *Timeliness* should be stricken as they contain new expert testimony, which should have been disclosed under Rule 26 of the *Federal Rules of Civil Procedure*. As explained above, the *Timeliness* do not include any expert testimony, let alone any "new" expert testimony. In the *Motion*, SUFFOLK unsurprisingly fails to address specifically what in the *Timeliness* constitute expert testimony. That is because they cannot. SUFFOLK's own arguments that its timelines should be admissible (*i.e.*, as they do not contain expert testimony and are based on factual date from the record) equally apply to BERKLEY/TITUS and, as such, the *Timelines* should not be stricken.

Federal courts in Florida routinely allow the use of factual timeline demonstratives, akin to the *Timelines*, for use at trial. *Sowers v. R.J. Reynolds Tobacco Co.*, No. 3:09 C 11829, 2015 WL 12843904, at *2 (M.D. Fla. Jan. 23, 2015) (holding that there is nothing "inherently improper about Plaintiff creating and using a multi-witness timeline demonstrative throughout trial to assist with the presentation of her case"); *Woodruff v. R.J. Reynolds Tobacco Co.*, No. 3:09-CV-12594, 2015 WL 506281, at *3 (M.D. Fla. Feb. 6, 2015) (same); *Michigan Carpenters' Pension Fund v. Rayonier Advanced Materials, Inc.*, No. 3:18-CV-771-J-34JRK, 2019 WL 1429667, at *3 (M.D. Fla. Mar. 29, 2019) (denying motion to strike demonstrative timeline of key events).

Here, the *Timelines* could not be a more classic example of a fact-based demonstrative. Each entry simply states the existence of an event on a particular date, and every event in the *Timelines* is taken from a document that is either agreed as a Joint Trial Exhibit or proposed to be introduced by one of the parties. Accordingly, SUFFOLK has presented no valid basis to strike the *Timelines* and, as such they should not be stricken.

CASE NO.: 19-23059-CIV-WILLIAMS

### C. <u>The *Animations* Should Not Be Stricken as a Matter of Law</u>

In the *Motion*, SUFFOLK wrongfully argues that the *Animations* should be stricken as untimely expert testimony. The *Animations*, however, do not include expert analysis and are merely computer-generated animations (like a demonstrative graph or chart) representing the factual testimony to be presented at trial. In accordance with applicable law, BERKLEY and TITUS are permitted to use the *Animations* at trial and timely submitted all material to do so.

For purposes of admissibility at trial, courts draw a substantial distinction between computer "animations" and "simulations." *Pierce v. State*, 718 So. 2d 806, 808 (Fla. 4th DCA 1997) (expert scrutiny is applied to simulations, but not animations); *People v. Hung Tran*, 50 Cal. App. 5th 171 (4th Dist. 2020); *People v. Cauley*, 32 P.3d 602, 607 (Colo. App. 2001). Computer animations, like the *Animations*, are computerized graphical exhibits used to illustrate a witness' testimony, without drawing conclusions. *Hung*, 50 Cal. App. at 187; *Cauley*, 32 P.3d at 606-07. Computer simulations, on the other hand, are created by entering data into computer models that analyze the data and reach a conclusion, contain scientific or physical principles requiring validation and constitute substantive evidence. *Hung*, 50 Cal. App. at 187; *Cauley*, 32 P.3d at 606-07. Computer simulations, unlike the *Animations*, are "recreations or experiments based upon scientific principles and data." *Cauley*, 32 P.3d at 606-07. As explained by 57 Am. Jur. Prrof of Facts 3d § 45 (2021) ("Establishing Foundation to Admit Computer-Generated Evidence as Demonstrative or Substantive Evidence"):

> ***Computer animations*** are computerized graphical exhibits used to illustrate a witness's testimony. That type of computer-generated evidence ***generally does not present special admissibility problems*** … and courts often apply a less rigorous standard in allowing their use in the courtroom. (Emphasis added)

CASE NO.: 19-23059-CIV-WILLIAMS

As computer animations are graphical depictions of the testimony of a witness, they are treated more leniently by courts, and courts generally analyze animations as they would a chart or graph, requiring the proponent to meet the standard for admitting demonstrative evidence (*i.e.*, the computer animation must "fairly and accurately reflect the underlying oral testimony and aid the jury's understanding"). *Id.*; see also *Pierce v. State*, 718 So. 2d 806 (Fla. 4th DCA 1997) (court did not abuse its discretion in permitting jury to view computer animation of automobile accident where the animation, akin to a demonstrative exhibit, was a fair and accurate representation of what it purported to depict); *People v. Cauley*, 32 P.3d 602, 607 (Colo. App. 2001) (holding that a computer animation was admissible in trial and analyzing same as a demonstrative exhibit (*to wit:* "demonstrative evidence is authenticated if there is evidence to support a finding that the item is what its proponent claims it to be")). *People v. McHugh*, 476 N.Y.S.2d 721, 722 (Sup. Ct. 1984) (admitting computer animation and merely requiring that the reenactment be relevant, an accurate representation of the testimony, and that it aid the jury's understanding).

Here, and as is explained in the *Bennink Affidavit*, the *Animations* are merely factual illustrations backed by data in the Daily Reports and were not created by entering data into a computer model, reaching conclusions or containing scientific principles. The *Animations* do not contain expert testimony or opinions. They do not engage in modelling, projections, processing, or computer analysis of facts. As such, the *Animations* are computer animations, not simulations. Contrary to the foundation of SUFFOLK's argument, the *Animations* do not include new expert testimony which BERKLEY and TITUS were required to disclose in accordance with Rule 26 of the *Federal Rules of Civil Procedure*. In fact, BERKELY and TITUS more than timely disclosed the *Animations* and backup documentation given that the *Animations* were produced to SUFFOLK at over three (3) months before the scheduled trial (which to date has postponed to an undetermined

time) and SUFFOLK has had the backup documentation throughout the vast majority, if not all, of the litigation. *See Clark v. Cantrell*, 339 S.C. 369, 385 (2000) ("suggesting animation and underlying data should be disclosed at least two weeks before trial"). In fact, SUFFOLK has been in possession of the relevant construction documents (*i.e.*, Construction Schedules, Daily Logs, project correspondence, payment applications, etc.) as they were generated during the construction process.

Moreover, as the *Animations* merely contain factual data, a fact witness such as TITUS' corporate representative may introduce the *Animations* and show that it "fairly and accurately" illustrates the evidence backed by the daily log reports and the status of the Project throughout the respective time periods. Alternatively, Bennink can also testify as to the documentary support from which the *Animations* were created including his consultations with TITUS. Either way, the *Animations* depict information that is factual, that is contained in documents produced during discovery, and that illustrate this data in a way that avoids testimony regarding hundreds of separate documents. The *Animations* are entirely appropriate under the *Federal Rules of Evidence* and under the circumstances of this case.

Accordingly, BERKLEY and TITUS timely disclosed the *Animations*, and, as a matter of law, they should not be stricken.

### IV. CONCLUSION

The *Demonstrative Exhibits* do not contain any expert opinion or analysis as Mr. Bennink has testified. To the contrary, *Demonstrative Exhibits* are fact-based illustrations that will aid the Court in understanding this complex construction matter, streamlining extensive factual information contained in voluminous project records. The *Animations* will give the Court a unique, visual, and impartial perspective, showing the Court exactly how the drywall work was

actually sequenced derived from the Daily Logs the parties were required to maintain contemporaneously with the performance of the *Subcontract*. The *Animations* were the by-product of a purely factual exercise. Similarly, the *Timelines* contain no expert testimony and are universally accepted as demonstrative exhibits. For the same reason SUFFOLK argues that the SUFFOLK timeliness are admissible, the *Timelines* should be admissible as well. As the *Demonstrative Exhibits* are factual in nature, BERKLEY and TITUS timely disclosed the *Demonstrative Exhibits* and they should not be stricken.

Finally, if SUFFOLK legitimately wishes to challenge the *Demonstrative Exhibits*, it should do so at trial after hearing BERKLEY/TITUS' witnesses testify about their preparation and supporting foundation. It is a determination that this Court should make during the trial after hearing the witnesses and the evidence, not beforehand, and, certainly, not based on an unsupported "expert report" theory.

**WHEREFORE**, BERKLEY and TITUS respectfully request that this Honorable Court deny the *Motion*, awarding BERKLEY and TITUS any other and further relief that this Court deems necessary, just and proper.

**ETCHEVERRY HARRISON LLP**
Attorneys for BERKLEY and TITUS
150 South Pine Island Road, Suite 105
Fort Lauderdale, Florida 33324
Tel.: (954) 370-1681 | Fax: (954) 370-1682
Harrison@etchlaw.com
Etcheverry@etchlaw.com
Service@etchlaw.com

By: /s/ *Edward Etcheverry*
Edward Etcheverry, Fla. Bar No.: 856517
Guy Harrison, Fla. Bar No. 368806

CASE NO.: 19-23059-CIV-WILLIAMS

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on this 11th day of November, 2021, we electronically filed the foregoing document with the Clerk of the Court using CM/ECF. We also certify that the foregoing document is being served this day on all parties of record, via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ *Edward Etcheverry*
Edward Etcheverry, Esq,

## SERVICE LIST

***Counsel for Suffolk Construction***
Ralf R. Rodriguez, Esq.
Jason R. Domark, Esq.
Janet Rayo, Esq.
COZEN O'CONNOR
Southeast Financial Center
200 South Biscayne Boulevard
Suite 3000
Miami, Florida 33131
Tel. 305-358-4310
RalfRodriguez@cozen.com
Jdomark@cozen.com
Jrayo@cozen.com
JFried@cozen.com
Jphelan@cozen.com
Bwithers@cozen.com

***Co-Counsel for Suffolk Construction***
Suffolk Construction Company, Inc.
Legal Department
Juan Diaz, Esq.
Monique S. Cardenas, Esq.
426 Clematis Street
West Palm Beach, Florida 33401
Phone: 561-282-3000
Fax: 561-273-1805
jdiaz@suffolk.com
mcardenas@suffolk.com
eservice@suffolk.com