UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-23059-CIV-WILLIAMS/TORRES

BERKLEY INSURANCE COMPANY,
a foreign corporation,

    Plaintiff,

v.

SUFFOLK CONSTRUCTION
COMPANY, INC., a foreign corporation,

    Defendant.
_____/

SUFFOLK CONSTRUCTION
COMPANY, INC., a foreign corporation,

    Third-Party Plaintiff,

v.

TITUS CONSTRUCTION GROUP, INC.,
a Florida corporation,

    Third-Party Defendant.
_____/

**ORDER ON MOTION TO STRIKE EXPERT**

This matter is before the Court on Third-Party Plaintiff Suffolk Construction Company's ("Suffolk") Motion to Strike Berkley and Titus's Expert Analyses [D.E. 178]. The Motion has been fully briefed and is ripe for disposition. After careful consideration of the record presented, Suffolk's Motion to Strike Berkley's Expert Analysis is **DENIED.**

1

## *I. BACKGROUND*

Based on diversity jurisdiction, Berkley commenced this action in this District on January 20, 2020. The case arose from the construction of a skyscraper in Downtown Miami. Berkley issued surety bonds relating to the construction contracts between Suffolk, the general contractor on the project, and Titus, a subcontractor hired by Suffolk to perform specific work on the project. Berkley's surety bonds guaranteed Titus's payment for its project work. When Suffolk failed to pay Titus under their construction contracts, Berkley paid Titus. However, believing that Suffolk wrongfully withheld compensation, Berkley subsequently filed suit against Suffolk to recoup its surety bond losses. Additionally, Berkley sued Titus as a third-party defendant.

Suffolk filed its Answer, Affirmative Defenses, and Counterclaim to Plaintiff's Amended Complaint. [D.E. 32]. The defenses raised included prior breach of the Subcontracts by Titus and a Counterclaim against Berkley, as Titus's surety under the Bonds, based on alleged breach by Titus of the Subcontracts. Suffolk also filed a Third-Party Complaint against Titus seeking damages for alleged breach of the Subcontracts. [D.E. 33]. Consequently, Berkley filed its Answer and Affirmative Defenses to Suffolk's Counterclaim [D.E. 45], in which it asserted a defense based in part on Suffolk's own breach of the Subcontract. Berkley also raised a defense to Suffolk's demands on Berkley's Residential Tower Bond, seeking to recoup expenses it incurred in financing over $4.1 million to Titus to enable Titus to continue

performing under the Residential Tower Subcontract. Berkley thus posits that this sum should be credited against the Bond penal sum that was a focus of the counterclaim, thus limiting Suffolk only to recovery of whatever amount remained in the penal sum after Berkley's financing expenditures were deducted.

In response to Suffolk's demands upon Berkley's Residential Tower Bond, Berkley had financed over $4.1 million to Titus to enable Titus to continue performing under the Residential Tower Subcontract, and that this sum should be credited against its Bond penal sum, thus limiting Suffolk only to recovery of whatever amount remained in the penal sum after Berkley's financing expenditures were deducted.

## II.   APPLICABLE PRINCIPLES AND ALW

### A.   *Daubert* Standard

The decision to admit or exclude expert testimony is within the trial court's discretion, and the court enjoys "considerable leeway" when determining the admissibility of this testimony. *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004). The admissibility of expert testimony is governed by Fed. R. Evid. 702, which states: A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the district courts also serve as the gatekeeper, tasked with safeguarding the principle that expert testimony is admissible when "sufficiently reliable and relevant to be considered to the jury." *Smith v. United States*, No. 22-13645, 2023 U.S. App. LEXIS 20333, at *11 (11th Cir. Aug. 7, 2023); *United States v. May*, 846 F. App'x 831, 836 (11th Cir. 2021). Additionally, district courts acting as gatekeepers engage in a three-part test to determine the admissibility of expert testimony:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010); *City of Tuscaloosa v. Harcros Chemicals,* 158 F.3d 548, 562 (11th Cir. 1998). The party offering the expert testimony carries the burden of laying the proper foundation for its admission, and a preponderance of the evidence must show admissibility.

However, the gatekeeping role prescribed by Rule 702 is not intended to supplant the adversary system or the jury's role. Therefore, the district court's duty is not to make a conclusion to the persuasiveness of the proffered evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311-12 (11th Cir. 1999); *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). Instead, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking but admissible evidence." *Daubert*, 509 U.S. at 596. The Eleventh Circuit refers to the requirements

4

mentioned above as the "qualification," "reliability," and "helpfulness" prongs, and while they "remain distinct concepts,"; "the courts must take care not to conflate them." *Frazier*, 387 F.3d at 1260 (citing *Quiet Tech*, 326 F.3d at 1341).

In determining the reliability of a scientific expert opinion, the Eleventh Circuit also considers the following factors to the extent possible: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. Notably, however, these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis. *Quiet Tech*, 326 F.3d at 1341 (citations omitted).

Further, expert opinion may also be excluded under Rule 403 of the Federal Rules of Evidence, if its probative value is substantially outweighed by a bander of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403; *Frazier*, 378 F.3d at 1263.

**B.** *Rule 26(a) Required Disclosures*

Federal Rule of Civil Procedure 26 specified that each party must disclose the identity of its expert witnesses, along with a written expert report disclosing, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Expert disclosures must be

made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).

A party has an ongoing duty to supplement these initial disclosures and any responses to requests for production. Fed. R. Civ. P. 26(e)(1)(A). According to Rule 37(c)(1), if a party fails to supplement an initial disclosure or a request for production as required by Rule 26, that "party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The purpose of Rule 36 is to prevent the sandbagging of an opposing party with new evidence. *King v. Cessna Aircraft Co.*, 2010 WL 11505694, at *1 (S.D. Fla. May 7, 2010). Expert disclosure requirements under Rule 26(a)(2)(B) are "intended to provide opposing parties reasonable opportunity to prepare for effective cross-examination and perhaps arrange for expert testimony from other witnesses." *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F. 3d 1344, 1362 (11th Cir. 2008). The "party who is alleged to have failed to comply with Rule 26 bears the burden to show that its actions were substantially justified or harmless." *Parrish v. Freightliner*, LLC, 471 F. Supp. 2d 1262, 1268 (M.D. Fla. 2006).

When deciding whether a failure to comply with Rule 26(a) or (e) is substantially justified or harmless, a court must consider the non-disclosing party's explanation, the importance of the information, and any prejudice to the opposing party if the information were admitted at trial. *Romero v. Drummond Co.*, 552 F. 3d 1303, 1321 (11th Cir. 2008). Substantial justification is "justification to a degree that

could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Hewitt v. Liberty Mut. Group, Inc.* 268 F.R.D. 681, 682–83 (M.D. Fla. 2010). Furthermore, an untimely disclosure is harmless when there is no prejudice to the party entitled to receive the disclosure. *Id.*

### III. ANALYSIS

Defendant/Counter-Plaintiff and Third-Party Plaintiff Suffolk Construction Company, pursuant to Rule 37(c)(1), Fed. R. Civ. P. and S.D.L.R. 7.1, moved to strike Plaintiff Berkley Insurance Company and Third-Party Defendant Titus Construction Groups Composite Exhibit 2501 ("*Animations*") and Exhibit 2504 ("*Timelines*") (collectively, the "*Demonstrative Exhibits*") produced on August 16, 2021, long after the close of expert disclosures. [D.E. 178].

Suffolk alleges that Berkley and Titus never provided its *Animations*, *Timelines*, or its experts per the Court's Amended Scheduling Order. [D.E. 65]. Suffolk complains that none of the expert reports Berkley and Titus produced contained the new analyses, opinions, and findings now being presented for the first time in the *Demonstrative Exhibits*. Pursuant to the Court's Amended Scheduling Order, all discovery, including expert discovery, closed on February 19, 2021, and at no point did Berkley or Titus seek relief from the Court to submit or disclose new expert opinions and analyses. Instead, Berkley shortly thereafter decided to produce these new analyses through these exhibits that purportedly were neither previously

7

disclosed in its initial expert reports nor through its rebuttal exhibits, thereby depriving Suffolk of the opportunity to rebut these analyses. [D.E. 178, p. 5].

### A. *Whether the Demonstrative Exhibits Contain Expert Opinions*

Suffolk alleges that, not only have Berkley and Titus introduced new analyses and cited new documents not previously referred to in their experts' respective reports, they did so without offering any explanation for their failure to timely disclose. Berkley and Titus's six-month late disclosure wrongfully disregarded the Court's imposed discovery deadlines. *See Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008) ("[T]he expert disclosure rule is intended to provide opposing parties a reasonable opportunity to prepare for effective cross-examination and perhaps arrange for expert testimony from other witnesses."); *Tampa Bay Water v. HDR Eng'g, Inc.*, No. 8:08-CV-2446-T-27TBM, 2011 U.S. Dist. LEXIS 161919, at *4 (M.D. Fla. May 31, 2011) ("A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose.") (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)).

Because discovery had closed, Suffolk insisted that it could not depose Berkley and Titus's experts on any of the new analyses prepared, which would be highly prejudicial and fundamentally unfair. Had Suffolk obtained the new expert disclosures earlier, it would have had the opportunity to depose Berkley and Titus's experts to obtain answers to many questions including, but not limited to:

> (i) Berkley and Titus' lack of an effort to tier a cause-and-effect to the animations; (ii) Berkley and Titus' biased presentation of the flow of

8

> work; (iii) the inconsistencies that appear in the various animations; and (iv) which daily logs were used as source documents in Berkley and Titus' analyses and which were simply ignored.

[D.E. 178, p. 8].

Furthermore, Suffolk believes that Berkley and Titus have disguised new expert analyses into evidence as trial demonstratives six months after the close of discovery. That is also improper. *See Waite v. AII Acquisition Corp.*, 15-CV-62359, 2016 WL 4433713 (S.D. Fla. Apr. 28, 2016) (finding that when a party failed to timely disclose new expert disclosures and presents them at trial constitutes gamesmanship, which runs "against the language and policy of Federal Rules" to guard against trial by ambush).

Berkley and Titus argue in response that "[a] simple review of the *Demonstrative Exhibits* lays to rest Suffolk's sole argument that the *Demonstrative Exhibits* contain expert opinions." [D.E. 180, p. 2]. The *Demonstrative Exhibits* do not contain any expert analysis or opinion whatsoever and the *Animations* are solely a product of factual information derived from the Subcontract at issue in the case, together with other construction documents, such as Construction Schedules and Daily Logs. Berkley and Titus further maintain that the *Timelines* were based on events that occurred during performance under the Subcontract. Furthermore, the *Demonstrative Exhibits* are factually driven and are the type of documents routinely used in all types of litigation, specifically in complex construction litigation. [D.E. 180, p. 2].

The record shows that, after Mr. Michael Bennink, PE, provided his export report, Berkley and Titus asked him to assist in preparing the *Demonstrative Exhibits*

because Mr. Bennink had the "software" and "trial graphics" capability to generate the Exhibits. In the Affidavit of Michael Bennink, the *Demonstrative Exhibits* were not and were never intended to be any part of his report or analysis. [D.E. 180-4]. The *Demonstrative Exhibits* were not part of Mr. Bennink's Report, not generated by any expert calculations or computer models, and are a visual representation of the data in the Daily Logs and Construction Schedule. [D.E. 180-4, p. 2].

Expert evidence comprises testimony about a scientific, technical, professional, or other specialized issue given by a person qualified to testify because of familiarity with the subject or special training in the field. See Fed. R. Evid. 702–705. Berkley and Titus claim that the *Demonstrative Exhibits* do not fit that definition because they are classic types of traditional evidence—like any chart or graph—that could have been created by any fact witness or graphics company based on the factual data in the record. Because these *Demonstrative Exhibits* merely illustrate factual events during the work based on contemporaneous Project documents, no opinion is conveyed through the graphics per se and, therefore, they cannot be deemed expert testimony. Indeed, Mr. Bennink affirmed that he did not use any "methodology" to create the *Demonstrative Exhibits*.

The Court's review of the record shows that Suffolk's complaints about the *Demonstrative Exhibits* representing new expert opinions are exaggerated. Whether a sufficient predicate can be laid for the use of the Exhibits is a matter left for the presiding Judge. But these Exhibits cannot be summarily excluded on the basis that they purport to be something they are not.

B.     *Whether the Timelines Should be Stricken as a Matter of Law*

Suffolk's motion next asserts that the *Timelines* should be stricken as they contain new expert testimony, which should have been disclosed under Rule 26. However, Berkley and Titus argue that the *Timelines* do not include any expert testimony, let alone any "new" expert testimony.

Like Berkley and Titus's *Timelines*, Federal courts in Florida routinely allow factual timeline demonstratives for use at trial. For instance, in *Mich. Carpenters' Pension Fund v. Rayonier Advanced Materials, Inc.*, the Plaintiffs moved to strike a timeline of critical events and allegations from the Amended Complaint and a chart listing the challenged statements in context and the reasons each statement was non-actionable. *Mich. Carpenters' Pension Fund v. Rayonier Advanced Materials, Inc.*, No. 3:18-cv-771-J-34JRK, 2019 U.S. Dist. LEXIS 53577, at *11 (M.D. Fla. Mar. 29, 2019). The court held that there was no good cause for striking the Exhibits because the charts were demonstrative exhibits intended to aid to the court. Like the court held in *Mich. Carpenters' Pension Fund*, a timeline is a demonstrative exhibit that "are helpful in organizing the information before the Court, [which] the Court may rely on." *Id.* at *12.

Additionally, Berkley and Titus based the *Timelines* on either the Joint Trial Exhibits raised without objection or their Trial Exhibits (project correspondence, pay applications, and similar evidence). Therefore, the Exhibit does not present any new cataclysmic information, and instead Berkley and Titus plan to use them to help present their well understood claims and defenses at trial. *See, e.g., Sowers v. R.J.*

*Reynolds Tobacco Co.*, No. 3:09 C 11829, 2015 U.S. Dist. LEXIS 192209, at *2 (M.D. Fla. Jan. 23, 2015) (finding nothing improper about the Plaintiff using a multi-witness timeline demonstrative in trial to aid with the presentation of her case); *Mahoney v. Foundation Medicine, Inc.*, No. 17-11394-LTS, 2018 WL 4516684, at *4 (D. Mass. Sept. 20, 2018) (denying motion to strike because the chart was "helpful" in summarizing defendants' disclosures and risk warnings); *Tadros v. Celladon Corp., No. 15cv1458 AJB (DHB)*, 2016 WL 5870002, at *8 (S.D. Cal. Oct. 7, 2016) (finding that courts can take judicial notice of charts that compile information—unaltered from its source—and present it in an organized, easy to use format).

Based on the following reasons, the *Timelines* should not be stricken.

C. <u>**Whether the Animations Should be Stricken as a Matter of Law**</u>

The *Animations* depict the sequence of drywall work as the parties bargained-for planned sequence in the *Subcontract* ("*As-Planned Animations*") compared to how Suffolk caused the drywall work to be sequenced during construction ("*As-Built Sequence Animations*"). The *As-Planned Animations* visualize the progression of work up the building, which required Titus to work on and complete five sequential floors at a time based on the *Subcontract* and its Construction Schedule. The *As-Planned Animations* were created based on Suffolk's proposed Baseline Construction Schedule.

Berkley and Titus created the *As-Built Animations* using the information in Titus and Suffolk's Daily Logs regarding where workers were working in the building on a specific day and information from Titus regarding the particular activity.

However, Suffolk complains that the *As-Built Animations* depict inconsistencies on multiple occasions, depicting the work and invoking Suffolk and Titus's Daily Logs. [D.E. 181, p. 8].

When deciding evidence admissibility at trial, courts distinguish between computer "animations" and "simulations." See *Pierce v. State*, 718 So. 2d 806, 807 (Fla. 4th DCA 1997) (finding the animation was properly admitted as a demonstrative exhibit only). Computer animations are computerized graphical exhibits illustrating a witness' testimony without drawing conclusions. *People v. Tran*, 50 Cal. App. 5th 171, 187 (2020). On the other hand, computer simulations are created by entering data into computer models that analyze the data and reach a conclusion. *Id.* Additionally, these exhibits contain scientific or physical principles requiring validation and constitute substantive evidence. *Id.*

Computer animations are treated more leniently because courts generally analyze animations like a chart or graph, requiring the proponent to meet the standard for admitting demonstrative evidence. *Pierce*, 718 So. 2d at 807; see also *People v. Cauley*, 32 P. 3d 602, 607 (Colo. App. 2001) (holding a computer animation admissible in the trial because the court saw them as a demonstrative exhibit). In this case, as explained in Mr. Bennink's affidavit, the *Animations* are merely factual illustrations backed by data in the Daily Reports and were not created using any scientific principles or by entering data into a computer model. Therefore, the *Animations* do not include new expert testimony, which Berkley and Titus were required to disclose under Rule 26. Additionally, Berkley and Titus produced the

13

*Animations* three months before the originally scheduled trial, and Suffolk had the relevant construction documents used to make the *Demonstrative Exhibits*. Accordingly, Suffolk's motion is DENIED without prejudice to the trier of fact resolving the factual disputes about the accuracy of the *Animations*.

## IV. CONCLUSION

For the foregoing reasons, Suffolk's Motion to Strike Expert Analyses is **DENIED.**

**DONE AND ORDERED** in Chambers at Miami, Florida, this 23rd day of October, 2023.

_____
EDWIN G. TORRES
United States Magistrate Judge